Our next case is a Keystone Coal Mining Corporation v. Dir Office of Workers Compensation Programs, number 23-1481. Mr. Wildfire, how are you? Very good. Thank you. I can't help but note that you have an interesting name for someone who's representing a coal company. Wildfire. I gave you your brief, but that was in my mind the entire time. It's a Bavarian name. It's been in the United States since the 1830s. What can I say? It's not a word in German, but it is in English. All right. May it please the court, I'm Chris Wildfire. I represent the Keystone Coal Mining Company. This is a federal black loan case, and Mr. Johncheck had about 21 years of coal mine employment to his credit. Why don't we just get, where did the ALJ go wrong here? The ALJ went wrong in allowing a presumption to be invoked. These miners, when you have 21 years of coal mine employment, over 15 years of coal mine employment, you get a favorable standing in court. You're able to invoke a presumption, which the employer then has to rebut. In this case, presumptions can be invoked based on ventilatory studies, so-called pulmonary function studies, arterial blood gas studies, whether you have a core pulmonary, or whether you have a physician's opinion based on clinical test results. At the beginning, you don't dispute the fact that the basic driving presumption applies here in terms of his length of time in the mines and his disability. That's not disputed, is it? He has the requisite amount of coal mine employment, but he doesn't have the medical basis. The clinical test results can't invoke. Blood gases can't invoke. Pulmonary function studies can't invoke. The invocation was invoked based on a physician's opinion based on these clinical studies. However, lungs work two ways. They ventilate, breathing in and out, and that's measured by pulmonary function studies, and they oxygenate blood, which is measured by the blood gas studies. None of those results were qualifying. None of those results were, or all of those results were normal. So this is a sufficiency of the evidence claim? I mean, you're saying he doesn't have pneumoconiosis, if I've got that right, because there's not other evidence demonstrating the existence of a pulmonary impairment. And so by that, you're saying there's insufficient evidence showing a pulmonary impairment? Correct. And there's three doctors that found pulmonary impairment. How are we reweighing the evidence, though? We're not asking you to reweigh the evidence. The medical opinions can't get past the threshold. Under the fourth method of invocating doctors' opinions, doctors' opinions must be based on medically acceptable clinical and laboratory techniques. The pulmonary function studies were normal? The blood gas studies were normal. You said the pulmonary function studies were normal. Even I think the doctors who ended up supporting your position did qualify that by saying, well, you know, it's normal. But in the presence of airway obstructions or coldness in the airways of the environment, his airway disease may flare up. Isn't that correct? He has some hyperactivity, which was denoted by the medical treatment records. That's true. But a disability must be totally and permanently disabling. It must be chronic. This man's measured ventilation studies were normal. Blood gas studies were normal. Not when exercising, though, were they? Excuse me? Maybe at rest, but when exercising, they weren't normal, at least according to the doctor himself, though. Right. That was an earlier study. The PO2 value did go down a few millimeters of mercury. But they normalized in the next year when he had blood gas study testing. Again, a disability, whether it's an oxygenation deficit or ventilation deficit, has to be chronic, has to be permanent. And this shows a normalization in the next test, the most recent test. What if it only flares up when working in a mine, otherwise he's normal? Would that be considered permanent? I don't understand. If it only flares up when working in the conditions of a coal mine, otherwise when he goes home, would that be permanent for a miner? Well, I'm not sure if I understand your question. Let me use an analogy. Let's say someone is allergic to, I don't know, coal dust. Absent an environment with coal dust, the person is fine, normal and can function. In an environment with coal dust, their asthma is triggered. Now, would you say that would not be or would be a disabling factor for a coal miner? Because when he's not in the mine, he's fine, goes home, plays football. Well, there's case law about that. In this case, there's no medical opinion evidence that says he's prohibited to go into the coal mine because of some hyperactivity airways problem. None of the physicians reached that opinion. So basically said that not in those words, but I thought that was basically what at least the ALJ interpreted. So it was testimony as being and you're asking us to basically overturn that and say that the ALJ misinterpreted. So we're incorrectly or improperly credited his testimony. Well, Dr. Selko said that he lacked the capacity to perform his last mine job, if I'm paraphrasing it correctly. He didn't talk about whether once he goes into the mine, his lungs would or his airways would react to coal mine dust. He just said he is functionally impaired. Okay. Okay. But again, there's no ventilation impairment that's documentable. And there's no oxygenation deficit. If you base his oxygenation abilities on the last set of blood gas studies. So we're alleging to get back to your original question that these physicians can't be qualified to reach that opinion because they didn't base their opinions on medically acceptable clinical laboratory techniques, which is a threshold requirement. Okay. Did you raise that issue. Good question. Opposing Council alleged that we did not raise that. And I wanted to address that. As you know, there's two AJ opinions and two BRB opinions. If you go back to the first BRB opinion after we appealed for an important vacated part and remanded. They did affirm invocation. But they also indicated that the employer contends that the LJ aired in finding claimant totally disabled. The employer further contends that the LJ aired in crediting certain physicians opinions over others. Then it was remanded back to judge swank. He noted at page 21 issue the employer alleged was a claimant had not established a total disability. Went back to the benefits review board, who indicated at page nine of the materials, the employer again argues the LJ aired in finding payment was totally disabled. They cited employers brief pages 15 to 20. To answer your question. The beer, its first decision thought the employer raised that issue and addressed it. The LJ on remand thought the employer, raise that issue and noted it. And the BRB is second decision. Believe the employer, raise that issue and address it in our briefs, which Council added as a supplemental appendix pages, 2834 3944 in boldface indicated that this issue was raised the second brief page eight. I think that covers it. Again, to move to the medical merits. As I indicated already. The functions of the lung as measured were normal. The doctor's opinions who found Mr. John check impaired did not base their opinions on normal evidence. What do you mean by normal evidence. Normal hormonal function studies, normal blood gas studies. If your ventilation ability is normal, you really shouldn't be impaired. If your organization ability is normal. By measured results you shouldn't be considered impaired, either. And under the regulation I cited section 718.4 B to four. You must have underlying medical acceptable clinical and laboratory techniques evidence in order to support an opinion of total and permanent disability. Okay. Now, the question arises, was a rebuttal. If the presumption was invoked. But before you even get there. The claimant can't affirmatively prove a disability which is the alternative. If you can't invoke a disability presumption. Anyway, we have the opinions of doctors, but she to and Rosenberg has found that the claimant is not disabled. Based on clinical evidence. Going back to just made his earlier question. Aren't you asking us to reweigh the evidence here. That's, that's another very, very good question. We're not asking to reweigh the evidence. We're saying that the medical pain of and doesn't even qualify to be weighed for presumption consideration purposes. Under that regulation that I cited that they can't. The alternative is they have to affirmatively prove the case. And that's not what the judge did the judge relied on presumptions and rebuttal. Right and since you're a medical experts, I understood them saying such a medical experts didn't address whether the disability is causing whether the illness is causing the disabilities they simply said, he doesn't have the disability doesn't have the illness in other words, they never put in evidence you didn't put in evidence that were bought the presumptions to the LJ said, well, there's nothing left to do here. Well, that's basically correct. We have two sets of opposing medical opinions, and the two physician that we relied on. Based on the clinical evidence again found no evidence of disability. What they found at most was some hyperactive airways, and a restrictive component inability to get into the lungs, based on this man's overweight status. Now, you relied upon the two doctors you hired the petitioner relied upon the two doctors, he hired in the LJ said well look we've got a neutral doctor here, so it was hired by the Department of Labor. And so I think I should give his opinion, particular weight, and he also he also currently in line, the blood gas studies upon exertion. But what is wrong with that why should we overturn that. Two reasons. One, Dr self was not neutral. The claimant requested that he be examined by Dr. Selkow, and Dr. Selkow works for the labor laws, you know, he's paid by the Department of Labor, labor, but he works for an association that represents claimants. Well, if he's paid. He's paid by the Department of Labor. Some folks would say he works for the Department of Labor, or follow the money. Yeah. To quote an old legal. Well, what I'm saying is, he worked for lungs at work, which was this man's original claimants attorney la attorney. Lovely person represented. The second point you raised is that Dr Selkow relied on the first set of blood gas study results. Again, they don't. They're not qualifying, which means they're not below the standard of the Department of Labor for disability. And they normalized later, a year later, when Dr Bushida testism Dr Selkow did not review the second set of blood gas studies. And he made actually a wrong statement he indicated that those blood gas studies were qualifying. And they were not that was wrong, which the ALJ recognized and reviewing court recognized as well. So we'll see how we go. Miss Carter. Please the court. My name is Tim McDonald I represent the respondent in this case, Mr. Michael Johnson. It's my pleasure to introduce to the court. Miss Haley Carter is Carter is a third year student at Washington University School of Law, working in our black lung clinic. She'll be presenting oral argument on behalf of Mr. Johnson. Thank you. Thank you to the law school for doing this work on a pro bono basis greatly appreciated. Morning. May it please the court. We're here today because employer wishes to relitigate a case that they lost, and they're not entitled to do that for four reasons. First, judging conclusions on total disability and the rebuttable presumptions are supported by substantial evidence. Second, employer has waived its argument that judge like failed to review all of the evidence together. Third, judge like fulfilled his duty of explanation, and fourth, judge like did properly way all of the evidence. What about your opponents argument about the gas having been normalized with Dr. examined it and that Dr. Santo never did a subsequent evaluation after machine. His test was outdated in other words I think, according to Mr. Taking that question one at a time. Mr. Johnson's gas did not normalize. That's shown by a walk test, even a month later, but looking specifically at Dr. Vashita's ABG he only performed an ABG. He did not perform an ABG at exercise. Therefore, it's impossible to tell what his blood gas numbers would have been an exercise, which is what most correlates to a miners exertional requirements in the coal mines to your second question about not reviewing that second study. Judge Swank found that Dr. Salgo his opinion was well reasoned and well documented is unnecessary for him to further review that the body of evidence that Dr. Salgo had written time was sufficient for him to reach his determinations regarding total disability, black lung, and the causation standards. But turning to the question of substantial evidence, we see that employers brief is almost entirely dedicated to this question. This court has explained that substantial evidence means quote such relevant evidence is a reasonable mind might accept is adequate to support a conclusion, or another way you just need more than a mere scintilla of evidence. And further, as this court has explained. If there's substantial evidence this court must affirm the LJs interpretations of the facts or evidence even if it might have interpreted them differently in the first instance, there is significantly more than a mere scintilla of evidence in this record to support Judge Swank's conclusions, but looking at the question of total disability because that's why these presumptions were invoked under the black lung regulations a minor is deemed totally disabled if he has a pulmonary or respiratory impairment that would prevent him from returning to his last usual coal mine employment. So it's important to look at what Mr. Johnson's last job was. He worked for stipulated 21.83 years, and he worked underground as assistant foreman and Cole seems averaging 42 inches. This meant that the height of the ceiling he was working in was 42 inches tall so Mr. Johnson was over 70 inches would have to crawl on his hands and knees bend over and duck walk backwards of six hours a day, all while carrying a tool belt weighing 50 pounds, you have to lift and remove a 60 pound box with 50 pounds. According to his own testimony yes your honor was in the tool belt. I'm not sure I could only imagine some wheels on there. Between five to six times a day he would have to lift and remove a 60 pound box of dust in order to empty it. His work was characterized by constant heavy physical exertion. Sometimes he would even have to lift 150 pound cables. So then looking at the medical evidence, Dr. Sued and craft to board certified pulmonologist and Dr. Selkow board certified internist all concluded that Mr. Johnson does not have the pulmonary or respiratory capacity to return to his job. So what's so cool really an independent individual so to speak, Dr. Selkow was an approved was on the list of approved DL examiners, and that's why he was selected to do his report. And in fact Dr. Selkow looking at this question of total disability found that Mr Johnson oxygen dropped to 90% after just pedaling on a bike for eight minutes. Dr. Sued observed that Mr Johnson doesn't even have the pulmonary respiratory capacity to perform a coal mining job that only requires the median level of exertion, let alone the physical hard demands of Mr Johnson's actual job, what were the specialties for machine and Rosenberg. I believe both were board certified home and. Yes, sir. And finally, Dr craft concluded there was Mr Johnson's gas exchange normality that rendered him totally disabled, specifically given his poor oxygen saturation at exercise which again is a better indicator of how he will perform in the coal mine. Mr Johnson had numbers like 90% 92% 89%, which Dr craft concluded would make Mr Johnson proceeded from such tasks as quote walking bending maneuvering in a local steam mine while carrying heavy items and having to repair and manipulate mine structures. All of those aspects of his job, but of particular importance to judge swing was a walk test performed in July of 2019, and which Mr Johnson's oxygen dropped from 95% at rest down to 89% after walking on a treadmill for six minutes, only going two and a half miles per hour, and 0% incline for at the end of that test Mr Johnson reported a nine on a scale of zero to 10 with 10 being the most out of breath and fatigue before it's reasonable and entirely rational for the doctors and just trying to conclude that a man who's oxygen drops to 89% after walking slowly on level terrain could not turn to the physically demanding job of his last home my employment. But employer is simply unhappy with how judged by the opinions, and he wishes that more weight was placed on their experts, and these non qualifying test results and I think it's important to look at what those test results show, and what they say by qualifying employers preferring the regulations Appendix B, I was, I mean, I, I imagine they will say no we get it the LJs evidentiary findings can't be reweight. What was wrong was to shift to the physician assessments instead of looking at the medical evidence, and that's legal error with you. So, what's the response to that. Yes, Your Honor. So these rebuttable presumptions underneath Appendix B and C are just one of four different ways in which a minor can show that he is disabled, and those Appendix B and C they are the pulmonary function test or So the question here that the judge must answer is whether or not minors pulmonary respiratory capacity, allows him to return to his colon employment. So a minor that doesn't meet those zoomed qualifying numbers is not not totally disabled. It's just one particular metric that could be used in evaluating a minor can still be classified as totally disabled even if they don't reach those simply because the doctors are using their reasoned medical judgments, as allowed within the regulations to look at those his breathing or respiratory impairment compare that to a physical job requirements, but further I think it's important to look at Mr. Johnson's actual testing. No, none of them met Appendix B or C there's no question there. But Mr. Johnson's ABG from August 7 2018 missed the cutoff from being presumptively totally disabled from any coal mining job by point seven MMHGs, that's one unit of measure, and Dr. Looking additionally at what Dr. Beshida's opinion, Dr. Beshida did not sufficiently connect Mr. Johnson's physical job requirements to that abnormal testing. In fact, he simply stated that Mr. Johnson did quote unquote expensive walking or did everything. Further, Dr. Beshida never reviewed the July 2019 walk test where Mr. Johnson desaturated to 89%. Who didn't, who did not review it? Dr. Beshida. What caused him to do a second test? Why did he do it? Why do you test them at all without looking at the initial testing? I'm not sure why different testing was done but there were two walk tests performed within this record one was with Dr. Beshida in June of 2019. And in that test Mr. Johnson got from 96% to 92%. Which is Dr. Beshida claimed was not clinically significant. But Drs. Rosenberg and Kraft all said that that was abnormal. Further, even Dr. Rosenberg stated that this showed variability within Mr. Johnson's breathing. And then a year or a month later in July of 2019 Mr. Johnson performed another walk test and that is the one where he dropped down to 89% oxygen saturation. It's important to note too that Dr. Beshida never addressed within his report these near disabling ABG numbers from August of 2018. In fact, Dr. Beshida's report actually has the typographical error with it, where the numbers that he states from that August 2018 are the ones that would have qualified Mr. Johnson as totally disabled underneath. Say that again. Within Dr. Beshida's opinion, when he lists out the ABG numbers from August of 2018, he states that Mr. Johnson has a PCO2 of 39 and a corresponding O2 of 61. That is qualifying underneath Appendix C of the regulations. This was an error. Mr. Johnson's PCO2 is actually 39.7 with the corresponding 61. But Dr. Beshida never addresses this near presumptively disqualifying numbers. He simply says Mr. Johnson's breathing improved. But again, he only performed a resting ABG. He did not perform an exercise ABG. And finally, Dr. Beshida asserts that Mr. Johnson's impairment is caused by asthma. Asthma is nowhere within the medical treatment records. Mr. Johnson was never diagnosed with asthma by any treating physician, contrary to what Drs. Beshida and Rosenberg assert. In fact, yes, Mr. Johnson was, in fact, prescribed an inhaler in January of 2019. But his treating physician specifically wrote it was for pneumoconiosis, black lung, not asthma. What was the inhaler? Is it in the record? It is in the record. That's on JA449. What does it say? It specifically says on JA449, it says PT would like to get Simbicort, the inhaler, through the VA and Butler. That was for financial reasons. And then it says, quote, he is taking this for chronic cough from pneumoconiosis, and it significantly helps. Nowhere in the record is he diagnosed with asthma or any sort of sign of that. And finally, looking at Dr. Rosenberg's opinion, this is at minimum equivocal. In his deposition, Dr. Rosenberg explained that Mr. Johnson would be able to return to his last usual coal mining job, except when his airway disease is flaring. That was a remarkable statement. Absolutely remarkable statement. Like you say, except for the missing leg, you'd be fine running the 100-yard dash. Didn't make an awful lot of sense. Yes, Your Honor. And we would assert this is an admission of total disability, or at the very least is equivocal. And that fed into Judge Swank's understanding and his weighing of this evidence. For Dr. Basheeda did review the July 2019 walk test where Mr. Johnson dropped to 89, and he, too, showed that or stated that that testing was abnormal. Next, look at those rebuttable presumptions. Judge Swank's conclusions are entirely supported by substantial evidence. He also fully explained himself with these presumptions. Once this is invoked, a minor is presumed to have clinical and legal black lung, and he's also presumed that his black lung is the cause of his total disability. And employers failed to rebut that. Looking at clinical black lung, that's defined as those diseases characterized by the permanent deposition of particulate matter in the lungs and its reaction to that deposition of matter. To rebut this, employer must show that he does not or did not have it. And in this case, they did not do that. There are numerous x-rays within the record showing that it is positive for clinical black lung. But Judge Swank didn't just stop there. He also looked at the physician's opinions. And Dr. Basheeda and Rosenberg all relied on evidence outside of the record. Therefore, they were given less weight. Looking next to legal black lung, Judge Swank explained that Dr. Basheeda and Dr. Rosenberg only address one type of legal. Legal can be defined as caused or substantially aggravated by coal dust. And they refrained from having any sort of opinion on that substantially aggravated. They only stated that his asthma and obesity was the cause of his breathing impairment. And all of those assertions are refuted by Dr. Selkow, Sood, and Kraft, particularly with asthma. Mr. Johnson's breathing improved after he lost 18 pounds, 7% of his body weight. And finally, as noted earlier, substantial evidence exists that they failed to rebut this causation element. They're required to show that, quote, no part of the minor's respiratory or pulmonary total disability was caused by pneumoconiosis. And in this case, their experts denied that he had black lung and they denied that he was totally disabled. Therefore, they offered no opinion as to the role, if any, of black lung in his total disability. And I'm getting to the end of my time. You talk about waiver because you mentioned that in your briefs and counsel had an opportunity to address. Yes, Your Honor. I believe there is some confusion as to what exactly we are arguing was waived. The argument we assert that employer has waived is that Judge Swank did not review the evidence together, which is legally required. This means that the judge can't silo the evidence individually. He needs to look at the full gestalt of the minor. And in this case, they waived that. This is an issue per conclusion situation. It is required by 20 CFR 802.211.2b that they have to see with specificity the issues on appeal. And they never raised that issue until this court. So we just hold that this court affirmed Judge Swank's conclusions because it is supported by substantial evidence. He fully explained himself and he properly weighed all the evidence together. Thank you. Thank you very much. Very brief. First of all, our argument is that the claimant can't invoke a presumption based on the clinical test results. What about the argument here that Rosenberg never looked at the or compared the resting ABG? I think that was the argument. I may be misstating it. But did not factor into his medical conclusion the difference between the AG at rest and after exertion. Doctors Beshida and Rosenberg both had the opportunity to review all of the evidence. If I was looking through the materials right now and I didn't see what counsel was referring to, we're not referring to. She knows the record. But if they did not refer to those walk test results, they had them to review. They just didn't mention them in the report. Not all doctors reconcile results altogether. For instance, Dr. Kraft never reconciled the blood gas study results that were normal with his impairment with her impairment diagnosis. But anyway, our argument is that the medical opinion is insufficient to invoke. Counsel talked about rebuttal. We don't think that you even have to go there, that nothing can be invoked. I claim it did not affirmatively prove a case and rebuttal isn't necessary. Thank you very much. And again, thanks to the Washington and Lee Law School, Mr. McDonnell and Miss Carter. Enjoy what's left of law school. I hope to see you here soon. I just have to take the liberty of saying, Miss Carter, not saying you're a witness. You are an amazing advocate. You are amazing. I do hope you come back and argue before we get in because it would be a real delight and a pleasure to see you. You know the record, you know the law, and you do it in a way that very few experienced advocates were able to argue. So you're going to have a fine career ahead of you. Hope is in Philadelphia. You've got a wonderful career ahead of you. Thank you.